1
2
3
4
5
6
7
8          IN THE UNITED STATES DISTRICT COURT

9          FOR THE EASTERN DISTRICT OF CALIFORNIA

10   DENNIS PEDDY,

11          Petitioner,                    No. 2:  10-cv-1717 WBS CKD P

12     vs.

13   GARY SWARTHOUT, Warden,

14          Respondent.              FINDINGS AND RECOMMENDATIONS

15   _____/

16          Petitioner is a state prisoner proceeding *pro se* with a petition for writ of habeas

17   corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted of attempted murder with a

18   weapon and great bodily injury.  Petitioner received a sentence of life imprisonment with the

19   possibility of parole plus four years.  Petitioner does not challenge his conviction.  Instead,

20   petitioner challenges the February 2009 decision by the California Board of Parole Hearings

21   ("Board") denying him parole.  First, petitioner asserts that the denial of parole deprived him of a

22   protected liberty interest without due process of law ("Claim I").  Second, petitioner asserts the

23   Board's reliance on Marsy's law to delay his next parole hearing for seven years was misplaced

24   as he was only convicted of attempted murder and that applying Marsy's law to his case violated

25   the Ex Post Facto Clause ("Claim II").  For the following reasons, the habeas petition should be

26   denied.

1

1    I.  PROCEDURAL HISTORY

2            The Board denied petitioner parole in February 2009.  Thereafter, petitioner filed

3    a state habeas petition in the Superior Court of California, County of Sacramento.  The Superior

4    Court denied that petition in a written opinion on July 29, 2009.  (<u>See</u> Pet'r's Pet. Ex. 1.)

5    Petitioner's state habeas petitions to the California Court of Appeal and the California Supreme

6    Court were each summarily denied.  (<u>See</u> <u>id.</u>)

7            Petitioner filed the instant federal habeas petition in July 2010.  Respondent filed

8    an answer in December 2010 and petitioner filed a traverse in January 2011.

9    II.  APPLICABLE LAW FOR FEDERAL HABEAS CORPUS

10           An application for writ of habeas corpus by a person in custody under judgment of

11   a state court can only be granted for violations of the Constitution or laws of the United States.

12   <u>See</u> 28 U.S.C. § 2254(a); <u>see also</u> <u>Peltier v. Wright</u>, 15 F.3d 860, 861 (9th Cir. 1994); <u>Middleton</u>

13   <u>v. Cupp</u>, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing <u>Engle v. Isaac</u>, 456 U.S. 107, 119 (1982)).

14   Petitioner filed this petition for writ of habeas corpus after April 24, 1996, thus the Antiterrorism

15   and Effective Death Penalty Act of 1996 ("AEDPA") applies.  <u>See</u> <u>Lindh v. Murphy</u>, 521 U.S.

16   320, 326 (1997).  Under AEDPA, federal habeas corpus relief is not available for any claim

17   decided on the merits in the state court proceedings unless the state court's adjudication of the

18   claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of,

19   clearly established federal law, as determined by the Supreme Court of the United States; or (2)

20   resulted in a decision that was based on an unreasonable determination of the facts in light of the

21   evidence presented in state court.  <u>See</u> 28 U.S.C. 2254(d).

22           As a threshold matter, a court must "first decide what constitutes 'clearly

23   established Federal law, as determined by the Supreme Court of the United States.'"  <u>Lockyer v.</u>

24   <u>Andrade</u>, 538 U.S. 63, 71 (2003) (quoting 28 U.S.C. § 2254(d)(1)).  "'[C]learly established

25   federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the

26   Supreme Court at the time the state court renders its decision.'"  <u>Id.</u> (citations omitted).  Under

1    the unreasonable application clause, a federal habeas court making the unreasonable application

2    inquiry should ask whether the state court's application of clearly established federal law was

3    "objectively unreasonable."  See Williams v. Taylor, 529 U.S. 362, 409 (2000).  Thus, "a federal

4    court may not issue the writ simply because the court concludes in its independent judgment that

5    the relevant state court decision applied clearly established federal law erroneously or incorrectly.

6    Rather, that application must also be unreasonable."  Id. at 411.  Although only Supreme Court

7    law is binding on the states, Ninth Circuit precedent remains relevant persuasive authority in

8    determining whether a state court decision is an objectively unreasonable application of clearly

9    established federal law.  See Clark v. Murphy, 331 F.3d 1062, 1070 (9th Cir. 2003) ("While only

10   the Supreme Court's precedents are binding . . . and only those precedents need be reasonably

11   applied, we may look for guidance to circuit precedents.").

12                      III.  ANALYSIS OF PETITIONER'S CLAIMS

13         A.  Claim I

14              In Claim I, petitioner argues that the Board's 2009 decision to deny him parole

15   deprived him of a protected liberty interest without due process of law.  More specifically, he

16   claims that the state court's adjudication of his due process claim amounted to an unreasonable

17   application of the "some evidence" requirement.  (See Pet'r's Pet. at p. 41-42; Pet'r's Traverse at

18   p. 2.)  He states that he "has a liberty interest in parole release unless there is some evidence of

19   current "unreasonable" dangerousness – a liberty interest protected by the federal Due Process

20   Clause."  (Pet'r's Traverse at p. 7.)

21              The Due Process Clause of the Fourteenth Amendment prohibits state action that

22   deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

23   due process violation must first demonstrate that he was deprived of a liberty or property interest

24   protected by the Due Process Clause and then show that the procedures attendant upon the

25   deprivation were not constitutionally sufficient.  Ky. Dep't of Corr. v. Thompson, 490 U.S. 454,

26   459-60 (1989).

1          A protected liberty interest may arise from either the Due Process Clause of the

2  United States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

3  expectation or interest created by state laws or policies."  Wilkinson v. Austin,  545 U.S. 209,

4  221 (2005).  See also Board of Pardons v. Allen, 482 U.S. 369, 373 (1987).  The United States

5  Constitution does not, of its own force, create a protected liberty interest in a parole date, even

6  one that has been set.  Jago v. Van Curen, 454 U.S. 14, 17-21 (1981); Greenholtz v. Inmates of

7  Neb. Penal, 442 U.S. 1, 7 (1979) (There is "no constitutional or inherent right of a convicted

8  person to be conditionally released before the expiration of a valid sentence.").  However, a

9  state's statutory scheme, if it uses mandatory language, "creates a presumption that parole release

10  will be granted" when or unless certain designated findings are made, and thereby gives rise to a

11  constitutional liberty interest.  Greenholtz, 442 U.S. at 12.  See also Allen, 482 U.S. at 376-78.

12  In California, a prisoner is entitled to release on parole unless there is "some evidence" of his or

13  her current dangerousness.  In re Lawrence, 44 Cal. 4th 1181, 1205-06, 1210, 82 Cal. Rptr. 3d

14  169, 190 P.3d 525 (2008); In re Rosenkrantz, 29 Cal. 4th 616, 651-53, 128 Cal. Rptr. 2d 104, 59

15  P.3d 174 (2002).

16          The landscape of a California state prisoner bringing a due process claim for

17  denial of parole on federal habeas review has changed since the parties filed their briefs in this

18  case with the United States Supreme Court decision in Swarthout v. Cooke, – U.S. –, 131 S.Ct.

19  859 (2011) (per curiam).  Prior to Swarthout, the Ninth Circuit held that as a matter of state law,

20  denial of parole to California inmates must be supported by at least "some evidence"

21  demonstrating current dangerousness.  See Hayward v. Marshall, 603 F.3d 546, 562-63 (9th Cir.

22  2010) (en banc).  In its decision in Cooke v. Solis, 606 F.3d 1206, 1213 (9th Cir. 2010) rev'd by,

23  Swarthout, 131 S.Ct. 859, the Ninth Circuit had held that "California's 'some evidence'

24  requirement is a component of the liberty interest created by the parole system of the state."

25  Nevertheless, in Swarthout, the Supreme Court stated that:

26          [w]hatever liberty interest exists is, of course, a *state* interest

4

created by California law.  There is no right under the Federal Constitution to be conditionally released before the expiration of a valid sentence, and the States are under no duty to offer parole to their prisoners.  When, however, a state creates a liberty interest, the Due Process Clause requires fair procedures for its vindication – and federal courts will review the application of those constitutionally required procedures.  In the context of parole, we have held that the procedures required are minimal.  In <u>Greenholtz</u>, we found that a prisoner subject to a parole statute similar to California's received adequate process when he was allowed an opportunity to be heard and was provided a statement of the reasons why parole was denied.  442 U.S. at 16.  "The Constitution," we held, "does not require more."  <u>Ibid.</u>

<u>Swarthout</u>, 131 S.Ct. at 862.  The Supreme Court continued by explaining that, "[b]ecause the only federal right at issue is procedural, the relevant inquiry is what process [the petitioners] received, not whether the state court decided the case correctly."  <u>Id.</u> at 863.  In particular, the Supreme Court determined that "it is no federal concern here whether California's 'some evidence' rule of judicial review (a procedure beyond what the Constitution demands) was correctly applied."  <u>Id.</u>

The Supreme Court therefore rejected the Ninth Circuit opinions that went beyond minimal procedural requirements and those that "reviewed the state courts' decisions on the merits and concluded that they had unreasonably determined the facts in light of the evidence."  <u>Id.</u> at 862.  In particular, the Supreme Court rejected the application of the "some evidence" standard to parole decisions by the California courts as a component of the federal due process standard.  <u>See id.</u> at 862-63.

In Claim I, petitioner asserts that the Board's 2009 decision denying him parole along with the state court's denial of his due process claim were not supported by "some evidence" as required under California law.  (<u>See</u> Pet'r's Pet. at p. 41-42; Pet'r's Traverse at p. 7-8.)  However, pursuant to <u>Swarthout</u>, the issue within petitioner's due process argument is limited to the procedures that petitioner received at his parole hearing.  A review of the record indicates that he was given an opportunity to be heard at his parole hearing along with a statement of the reasons why his parole was denied.  Accordingly, petitioner received the process

1    due to him under the Constitution.  See Swarthout, 131 S.Ct. at 862.  Thus, Claim I should be

2    denied.

3           B.  Claim II

4                  In Claim II, petitioner makes two distinct arguments.  First, he asserts that

5    Marsy's Law does not apply to him as he was only convicted of attempted murder not murder.

6    Second, he asserts that the Board's seven-year denial of parole pursuant to Marsy's Law violates

7    the Ex Post Facto Clause.  California voters passed the "Victims' Bill of Rights Act of 2008,"

8    otherwise known as "Marsy's Law."  Under California law as it existed prior to the enactment of

9    Marsy's Law, indeterminately-sentenced inmates were denied parole for one year unless the

10   parole hearing panel found it unreasonable to expect that parole could be granted the following

11   year, in which case the subsequent hearing could be delayed up to five years.  See CAL. PENAL

12   CODE § 3041.5(b)(2) (2008).  At his 2009 parole hearing, petitioner was subject to the terms of

13   Marsy's Law, which authorizes denial of a subsequent parole hearing for a period of up to fifteen

14   years.  See CAL. PENAL CODE § 3041.5(b)(3).  In this case, petitioner was denied a period of

15   parole for seven years.

16                 The last reasoned decision on the issues raised in Claim II was from the Superior

17   Court of California, County of Sacramento which stated as follows:

18          Petitioner additionally contends that the BPH's decision to delay
            Petitioner's next parole hearing for seven years until 2016 is the
19          result of the application of an amendment to Penal Code section
            3041.5 that was not intended to apply to an inmate who had not
20          committed a homicide.  He also argues that the amendments to that
            statute constitute an *ex post facto* law, or an unconstitutional bill of
21          attainder.  Petitioner's arguments do not have merit.

22          Petitioner argues that the amendments added to Penal Code Section
            3041.5 in 2008 that extended the time periods between an inmate's
23          parole hearings were not intended to be applied to an inmate like
            Petitioner, who did not commit a homicide.  To support his
24          argument, Petitioner cites to the preamble of the Proposition 9
            amendments.  The Petitioner's arguments do not have merit.
25
            First, Penal Code section 3041.5, by its express language, is not
26          limited to only murders.  Instead, that section begins with the

                                                 6

1    following provision:  "At all hearings for the purpose of reviewing
     a prisoner's parole suitability, or the setting, postponing, or
2    rescinding of parole dates, the following shall apply. . . ."

3    While the "STATEMENT OF PURPOSES AND INTENT" of
     Proposition 9 contained a reference to effect of the amendment
4    upon convicted murderers, the materials accompanying proposed
     law was not so limited.
5
     Instead, the ballot pamphlet materials did not limit the amendment
6    to just murderers.  Those materials stated that the amendment
     "Reduces the number of parole hearings to which prisoners are
7    entitled."  The Legislative Analyst's analysis clearly stated that the
     amendments would extend the time for parole hearings for "lifers"
8    described as inmates with a life sentence.  Specifically, in the
     section of the voter pamphlet analysis entitled "Changes Made by
9    this Measure," the Legislative Analyst states:  "Parole
     Consideration Procedures for Lifers.  This measure changes the
10   procedures to be followed by the board when it considers the
     release from prison of inmates with a life sentence.
11   Specifically:  Currently, individuals whom the board does not
     release following their parole consideration hearing must generally
12   wait between on [sic] and five years for another parole
     consideration hearing.  This measure would extend the time before
13   the next hearing to between 3 and 15 years, as determined by the
     board.  However, inmates would be able to periodically request
14   that the board advance the hearing date."

15   Thus, the express language of the statute, coupled with the voter
     pamphlet materials on Proposition 9, tend to demonstrate that the
16   amendments to Penal Code section 3041.5, were not intended to be
     limited only to parole hearings for convicted murders.  Instead, the
17   amendments are applicable to all parole hearings, and were
     directed to all inmates serving a life sentence, which includes
18   Petitioner.

19   Petitioner also argues that the change to the length of time between
     his parole hearings under the Prop. 9 amendments constitutes an *ex*
20   *post facto* violation when applied to him.

21   The state and federal Constitutions prohibit the legislative
     enactment of any *ex post facto* law.  (U.S. Const., art. I, § 10; Cal.
22   Const., art. I, § 9.)  Whether a given law is within this prohibition
     depends upon the effect of the law.  (People v. Smith (1983) 34
23   Cal.3d 251, 260.)  "[Two] critical elements must be present for a
     criminal or penal law to be *ex post facto*; it must be retrospective,
24   that is, it must apply to events occurring before its enactment, and
     it must disadvantage the offender affected by it."  (Weaver v.
25   Graham (1981) 450 U.S. 24, 29, fns. omitted; In re Jackson (1985)
     39 Cal. 3d 464, 469.)
26

                                        7

Similar *ex post facto* arguments were raised and rejected as to two previous amendments to Penal Code section 3041.5 in 1981 and 1982. Those amendments permitted BPH (or its predecessor) to hold parole hearings every two years instead of annually in certain varying circumstances. In 1981, the statute was amended to extend the period between parole hearings for inmates convicted of multiple murders. In 1982, the statute was amended again to extend that parole hearing delay to a broader spectrum of inmates.

In In re Jackson (185) 39 Cal.3d 464, the court held that the 1982 amendment did not violate the *ex post facto* clauses of the state and federal constitutions when applied to an inmate who committed his offense before its effective date. Instead, the Jackson court found that the amendment constituted a procedural change outside the purview of the *ex post facto* clause and did not alter the criteria by which parole suitability was determined, did not change the criteria governing an inmate's release on parole, and did not entirely deprive an inmate of the right to a parole suitability hearing. Although the court found that the change did eliminate the possibility that a parole date would be set within the period of the postponement, it also found the likelihood that the postponement would actually delay an inmate's release on parole until after the next hearing was slight.

In California Dep't of Corrections v. Morales (1995) 514 U.S. 499, the United States Supreme Court held that Penal Code section 3041.5 subd. (b)(2), as amended in 1981, did not violate the federal Constitution *ex post facto* clause. The 1981 amendment allowed the BPH (or its predecessor), when denying parole at a prisoner's initial parole suitability hearing, to defer the prisoner's next suitability hearing for up to three years if the prisoner had been convicted of more than one offense involving taking of a life and upon finding that it was not reasonable to expect parole would be granted during those following years. The Supreme Court based its ruling under the grounds that the amendment neither (1) effected change in the definition of the prisoner's crime, nor (2) increased the punishment attached to the crime, because (a) the amendment simply altered the method to be followed in fixing a parole release date and left unchanged both the sentencing range for the crime of which the prisoner was convicted and the substantive formula for securing any reductions in that sentencing range. Thus, the Supreme Court found the amendment had no effect on the standards for fixing the prisoner's initial date of eligibility for parole, and created only the most speculative and attenuated possibility of increasing the measure of punishment for crimes to which it applied, since the amendment (1) applied only to a class of prisoners for whom the likelihood of release on parole was remote, (2) it had no effect on any prisoner unless the parole board first concluded, after a hearing, that it was not reasonable to expect that parole would be granted at a hearing during following years, and (3) the parole board retained authority to tailor the frequency of

subsequent hearings to particular circumstances of an individual prisoner.

In <u>Garner v. Jones</u> (2000) 529 U.S. 244, the United States Supreme Court addressed a similar *ex post facto* challenge to a change in the duration between parole hearings in the State of Georgia.  The inmate in that case was serving a life sentence when he escaped and committed murder.  He was convicted and sentenced to another life sentence.  The Georgia state board of pardons and paroles amended its rules so that the interval of time between parole considerations was extended to at least every eight years.  The inmate was denied parole and the board scheduled reconsideration for eight years.  The inmate alleged the amendment violated the Ex Post Facto Clause, U.S. Const. art. I, § 10, cl. 1. The Eleventh Circuit Court of Appeal found the law violative of the Ex Post Facto Clause because the inmates' lengths of incarceration would be extended under the new law.  The U.S. Supreme Court reversed and remanded the action because there was no proof that the amended law lengthened the inmate's incarceration.  The board's policies permitted expedited parole reviews, with the eight-year interval being a maximum reconsideration date.  The board could set reconsiderations based on the suitability and likelihood of release.  Thus, the Supreme Court concluded the retroactive application of the law did not violate the Ex Post Facto Clause because there was no proof that the amendment created a significant risk of increased punishment for the inmate.  The rule gave the parole board broad discretion to schedule reconsideration hearings based on release suitability. (See also <u>In re Morrall</u> (2002) 102 Cal.App.4th 280, 306-306.)

Under <u>Garner</u>, "[w]hen the rule does not by its own terms show a significant risk [of increased punishment], the [inmate] must demonstrate, by evidence drawn from the rule's practical implementation . . . that its retroactive application will result in a longer period of incarceration than under the earlier rule."  (529 U.S. at 255.)

In this case, and in light of the holdings in <u>Jackson</u>, <u>Morales</u> and <u>Garner</u>, the primary issue raised by Petitioner's *ex post facto* challenge is whether the 2008 amendment to Penal Code section 3041.5 raises a real possibility that Petitioner's punishment (the period of incarceration) will be increased because there is evidence that Petitioner would otherwise have likely been paroled within the postponement period between 2009 and his next scheduled hearing in 2016.  In this respect, there is currently no evidence in the record that would compel the conclusion that Petitioner necessarily would have been granted a parole date, and paroled, before 2016. Petitioner provides no statistical evidence regarding normal duration of incarceration for inmates serving a life sentence for attempted premeditated murder.  And, it is too early to determine if that usual duration has been increased by the amendment to Penal

Code section 3041.5.  Petitioner has failed to show that the BPH's "practical" application of the new postponed hearing dates under the 2008 amendment to Section 3041.5 has in reality increased the amount of time that he will serve before parole.

Further, the amendments to Section 3041.5 contain provisions that allow the Petitioner to seek an earlier parole hearing, and permit the BPH to reduce the postponement period in its discretion. Provisions that give the parole board discretion to reduce the postponement period between parole hearings based upon the inmate's parole suitability, and to shorten the postponement period after the initial postponement is set if justified, were present in the Garner case.  The U.S. Supreme Court found that such provisions provided additional protection to the inmate by making it possible to obtain an earlier parole hearing if the circumstances warranted. It is also important to note that Garner implicitly approved at least an eight year span between parole hearings if based upon legitimate findings of unsuitability by the parole entity.  In this case, the delay is only seven years.

Under these facts, and the lack of evidence in the record regarding the practical effect of the law upon Petitioner, the Petitioner has not set forth a viable *ex post facto* challenge to the Proposition 9 amendments to Penal Code section 3041.5.

(Pet'r's Pet. Ex. 1.)

Petitioner's first argument within Claim II is without merit.  The statutory provision at issue does not distinguish between prospective parolees convicted of attempted murder as opposed to murder.  See e.g. CAL. PENAL CODE § 3041.5.  Accordingly, the state court's denial of relief on this argument was not an unreasonable application of clearly established federal law nor did it result in a decision based on an unreasonable determination of the facts.

Petitioner's *ex post facto* argument also does not warrant granting federal habeas relief.  The Supreme Court has stated that a law violates the Ex Post Facto Clause if it:  (1) punishes as criminal an act that was not criminal when it was committed; (2) makes a crime's punishment greater than when the crime was committed; or (3) deprives a person of a defense available at the time the crime was committed.  Collins v. Youngblood, 497 U.S. 37, 52 (1990). A court may find an ex post facto violation if a change in the law "produces a sufficient risk of

10

1   increasing the measure of punishment attached to the covered crimes." Cal. Dep't of Corr. v.

2   Morales, 514 U.S. 499, 509 (1995).  The Court has not articulated a specific formula for

3   "identifying those legislative changes that have a sufficient effect on . . . punishments to fall

4   within the constitutional prohibition on [ex post facto laws]." Id.  However, the court has found

5   that changes that create only the most "speculative and attenuated possibility of producing the

6   prohibited effect" of increasing punishment do not run afoul of the ex post facto clause." Id.;

7   see also Garner v. Jones, 529 U.S. 244, 251 (2000) (legislative change to parole rules must at

8   minimum create "significant risk of prolonging . . . incarceration" to constitute a violation of the

9   Ex Post Facto Clause).

10          The Supreme Court has not directly addressed whether application of Marsy's

11  Law to persons convicted prior to its enactment constitutes the sufficient risk of increased

12  punishment prohibited by the Ex Post Facto Clause.  However, the Court has addressed an ex

13  post facto challenge to a change in California law concerning the frequency of parole hearings.

14  In Morales, 514 U.S. at 514, the court found that a 1981 amendment to former section 3041.5,

15  which increased maximum deferral period of parole suitability hearings to certain individuals

16  from one to three years, did not violate the Ex Post Facto Clause.  Among other things, the court

17  found the fact that an inmate could always seek an expedited hearing if the inmate felt that,

18  between scheduled hearings, circumstances had changed to the point that he or she might at that

19  time be found suitable for parole.  See id. at 512-13.  Considering this fact, the Court found:

20  "there is no reason to conclude that the amendment will have any effect on any prisoner's actual

21  term of confinement . . ." Id. at 512.

22          Also, in Garner, 529 U.S. 244, the Court upheld Georgia's change in the

23  frequency of parole hearings for prisoners serving life sentences from three to eight years in the

24  face of an ex post facto challenge.  Again, the Court found it significant that inmates could seek

25  an expedited hearing in the event of a change of circumstances:

26          On the record in this case, we cannot conclude the change in

11

> Georgia law lengthened respondent's time of actual imprisonment. Georgia law vests broad discretion with the Board, and our analysis rests upon the premise that the Board exercises its discretion in accordance with its assessment of each inmate's likelihood of release between reconsideration dates.  If the assessment later turns out not to hold true for particular inmates, they may invoke the policy the Parole Board has adopted to permit expedited consideration in the event of a change in circumstances.

Id. at 256.

The changes to the frequency of parole hearings pursuant to Marsy's Law are more extensive than in Morales and Garner and can potentially result in subsequent parole hearings occurring as much as fifteen years after the prior hearing.  However, as in Morales and Garner, the Board has the ability to advance a parole suitability hearing when "a change in circumstances or new information" essentially establishes a reasonable likelihood that an inmate will be found suitable for parole.  CAL. PENAL CODE § 3041.5(b)(4).  Indeed, this section was specifically cited by the California Superior Court in denying petitioner's ex post facto argument.

After reviewing the facts applicable to petitioner's *ex post facto* claim, clearly established federal law as determined by the Supreme Court, and California statutes and regulations related to the frequency with which parole hearings occurring after the first parole hearing must be held, the state court's decision rejecting petitioner's *ex post facto* argument was not contrary to, nor did it involve an unreasonable application of clearly established federal law as determined by the Supreme Court.  Its conclusion is not out of line with decisions reached by the Supreme Court in both Morales and Garner, especially in light of the fact that, as in Morales and Garner, the parole board concerned can expedite a suitability hearing if the board believes it is reasonable to assume that the inmate in question will be paroled.  Claim II should be denied.

## IV.  CONCLUSION

For all of the foregoing reasons, IT IS RECOMMENDED that the petition for writ of habeas corpus be DENIED.

\\\\\

1    These findings and recommendations are submitted to the United States District

2    Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-

3    one days after being served with these findings and recommendations, any party may file written

4    objections with the court and serve a copy on all parties.  Such a document should be captioned

5    "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

6    shall be served and filed within fourteen days after service of the objections.  The parties are

7    advised that failure to file objections within the specified time may waive the right to appeal the

8    District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).  In any objections he

9    elects to file, Petitioner may address whether a certificate of appealability should issue in the event

10   he elects to file an appeal from the judgment in this case.  See Rule 11, Federal Rules Governing

11   Section 2254 Cases (the district court must issue or deny a certificate of appealability when it

12   enters a final order adverse to the applicant).

13   Dated: August 9, 2012

14

15   CAROLYN K. DELANEY
     UNITED STATES MAGISTRATE JUDGE

16

17

18

19

20
7
21   pedd1717.157

22

23

24

25

26

13